UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSE A. NADER, | Case No. 1:23-cv-2037 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Reuben J. Sheperd |
| NEW YORK LIFE INSURANCE CO., | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Jose Nader receives disability benefits from Defendant New York Life Insurance Company. Plaintiff brought this suit alleging that Defendant improperly calculated those benefits under his policy by incorrectly calculating cost-of-living adjustments. Accordingly, he brings a claim for breach of contract and seeks a declaratory judgment in his favor. After unsuccessful efforts to resolve this dispute and discovery, the parties filed cross-motions for summary judgment. In his reply, Plaintiff included evidence and raised certain arguments, which Defendant moves to exclude. Additionally, Plaintiff seeks leave to file authentications for his experts' reports. For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment, **DENIES** Plaintiff's cross-motion for summary judgment, and **DENIES AS MOOT** Defendant's motion to exclude new evidence and new arguments contained in Plaintiff's reply brief and Plaintiff's motion for leave to file authentications for his experts' reports.

## STATEMENT OF FACTS

As explained below, the Court need only address the merits of Defendant's motion for summary judgment. Therefore, the Court construes the record in the light most favorable to Plaintiff as the non-movant. The record establishes the following facts.

On December 28, 1991, New York Life Insurance Company issued the Premier Disability Income Policy No. H6001682 to Dr. Jose Nader. (ECF No. 1-1, PageID #26; ECF No. 12-1, ¶ 2, PageID #110.) The parties' "entire contract consists of this policy [the Premier Disability Income Policy No. H6001682], any attached riders or endorsements, and the attached copy of the application." (ECF No. 1-1, PageID #39.) The policy attached a rider called the Cost of Living Benefit. (ECF No. 1-1, PageID #41–42.)

New York Life reviewed and approved Dr. Nader's disability claim with a date of disability of February 23, 2000. (ECF No. 30-10, PageID #4963.) Dr. Nader was approved for total disability. (ECF No. 30-8, PageID #4065.)

Starting on May 23, 2000, after a 90-day elimination period, Dr. Nader was paid his $12,000 monthly income benefit. (ECF No. 12-1, ¶ 4, PageID #110–11.) A Supplementary Benefits subsection of the policy lists Dr. Nader's cost-of-living benefit as 5%. (ECF No. 1-1, PageID #27.) According to the Cost of Living Benefit rider, New York Life limits cost-of-living adjustments for total disability to the primary monthly income by an annual factor. (ECF No. 1-1, PageID #41.) Under this provision in the rider, New York Life would calculate Dr. Nader's benefits in the

second and each succeeding year by multiplying the $12,000 monthly income benefit by a factor determined by changes to the Consumer Price Index for All Urban Consumers, All Items ("the CPI-U") up to a limit set in the rider. (ECF No. 1-1, PageID #41; ECF No. 12-1, ¶ 4, PageID #111.) For example, the factor limit for the second year of benefits is 1.05, and for the third year it is 1.10. (*Id.*) Additionally, for the primary monthly income benefits payable after Dr. Nader reached age 65, the rider freezes the factor limit for any future adjustments at whatever factor is in use at age 65. (*Id.*)

On January 10, 2002, nearly seven months after his first year of benefits ended and the rider's adjustments kicked in, Dr. Nader contested the amount of the cost-of-living adjustments that he was receiving. (ECF No. 30-1, PageID #683.) Dr. Nader sent a letter to a customer care specialist at New York Life, expressing his concerns that his cost-of-living benefits "did not reflect the 5% as outline[d] in my policy." (*Id.*)

On January 17, 2002, in response, the customer care specialist explained that the "COLB Rider begins on the 365th day of disability," so the cost-of-living adjustments would not be payable to Dr. Nader until approximately February 23, 2001. (ECF No. 30-1, PageID #686.) She also explained that "each year we [New York Life] divide the current CPI-U factor by the CPI-U factor for 1999 to determine the new increase factor," and she includes a chart that breaks down the COLB Rider calculations. (*Id.*) She directed Dr. Nader to "the Cost of Living Rider attached to your policy" and advised "that your policy provides a Cost of Living Adjustment up to

3

5% . . . based on the above Consumer Price Index Calculation." (ECF No. 30-1, PageID #686–87.)

New York Life has paid total disability benefits to Dr. Nader for over 25 years under the Cost of Living Benefit rider. (ECF No. 12-1, PageID #110–11.)

## STATEMENT OF THE CASE

On September 13, 2023, Plaintiff filed suit in State court, alleging that Defendant breached the contract by limiting annual cost-of-living adjustments to changes in the consumer price index and imposing other annual limits on cost-of-living adjustments to his benefits. (ECF No. 1-1, ¶¶ 29–40, PageID # 18–20.) He seeks a declaratory judgment defining the parties' rights and obligations under the policy; compensatory damages in an amount in excess of $25,000.00 plus interest at the statutory rate for Defendant's breach of contract; and an award of reasonable attorneys' fees and costs. (ECF No. 1-1, ¶¶ 32–33, PageID #18–19; ECF No. 1-1, ¶ 41, PageID #19–20; ECF 1-1, ¶¶ A–C, PageID #20–21.) Defendant removed the case to federal court. (ECF No. 1; ECF No. 5.) The Court ordered jurisdictional briefing (ECF No. 9) and found that the amount in controversy exceeds the threshold for subject-matter jurisdiction. (ECF No. 13, PageID #130). Dr. Nader changed counsel in April 2024 (ECF No. 14), then the parties engaged in mediation that did not result in a resolution.

Following discovery, Defendant moved for summary judgment. (ECF No. 32.) Three days later, Plaintiff filed a motion to dismiss the case without prejudice (ECF No. 33), which the Court denied. (ECF No. 34). Then, Plaintiff filed a combined

4

opposition to Defendant's motion for summary judgement and cross-motion for summary judgment. (ECF No. 35.) After Defendant's combined reply in support of its motion for summary judgment and opposition to Dr. Nader's (ECF No. 38), Plaintiff filed a reply in support of his cross-motion for summary judgment (ECF No. 41), which included two new expert reports. (ECF No. 41-1, PageID #6068–88; ECF No. 41-3, PageID #6091–104.) Also, it contained several new statutory or regulatory claims. (ECF No. 41, PageID #6046, #6049–51 & #6053–54.) Defendant moved to exclude the new evidence and arguments contained in Plaintiff's reply. (ECF No. 42.) Finally, Plaintiff moved for leave to file authentications for his experts' reports. (ECF No. 45.)

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After

5

discovery, summary judgment is appropriate if the nonmoving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The Court's function at this stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson,* 477 U.S. at 250). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko*, 488 F. Supp 3d at 576 (citing *Anderson*, 477 U.S. at 250). However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson,*

6

477 U.S. at 247–48). "Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (cleaned up) (citations omitted). "Conclusory Statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)).

To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251.

"[W]here, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). Therefore, cross-motions for summary judgment do not warrant granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed. *Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 755 (6th Cir. 2015). Plaintiff and Defendant filed cross-motions for summary judgment. In

this procedural posture, the Court construes the facts in Plaintiff's favor in ruling on Defendant's motion for summary judgment, and in Defendant's favor in ruling on Plaintiff's motion for summary judgment.

## I.    Defendant's Motion for Summary Judgment

Defendant argues that Plaintiff's claims are time-barred under Ohio's statute of limitations as well as the policy's limitations period. (ECF No. 32, PageID #5672–75.)

### I.A.    Breach of Contract

#### I.A.1. Limitations Period Under Ohio Law

Section 2305.06 of the Ohio Revised Code provides the limitations period for an action on a written contract. The statute has undergone several amendments. *See Chaganti v. Cincinnati Ins. Co.*, 2025-Ohio-1982, ___ N.E.3d ___, ¶¶8–10 (Ohio Ct. App.) (discussing the history of the statute and its amendments). A prior version, effective until September 2012, allowed a claim to be brought within fifteen years of its accrual. *Id.*, at ¶ 8. The next version reduced that time to eight years. *Id.*, at ¶ 9. The current version, effective since June 16, 2021, further reduced the time to six years. *Id.*, at ¶ 10. A claim accrues, "at the latest, when a party discovers that his rights have been violated." *Turner v. Retirement Plan of Marathon Oil Co.*, 659 F. Supp. 534, 538 (N.D. Ohio 1987).

On December 28, 1991, New York Life issued the policy to Dr. Nader. (ECF No. 1-1, PageID #26; ECF No. 12-1, ¶ 2, PageID #110.) The Cost of Living Benefit rider was attached to the policy, making it part of the policy. (ECF No. 1-1, PageID #39 & #41–42.) In a letter to New York Life dated January 10, 2022, Dr. Nader

8

contested the methodology by which it calculated the fixed 5% cost-of-living adjustment. (ECF No. 30-1, PageID #683). On or around January 17, 2002, Dr. Nader received the response letter from New York Life explaining the calculations for the benefits that he had received under the policy. (*Id.*, PageID #686–87.) Accordingly, on or around January 17, 2002, Dr. Nader had actual knowledge of the facts relating to his claim for breach of contract.

In 2002, Section 2305.06 applied a 15-year statute of limitations to claims on a written contract. *Chaganti*, 2025-Ohio-1982 at ¶¶8–10. Therefore, Plaintiff had until January 17, 2017 to bring his claims. However, he did not file suit until September 13, 2023, more than 21 years after his claims accrued and more than six years beyond the statutory limitations period. Accordingly, Ohio law bars Plaintiff's complaint.

\* \* \*

In opposition to Defendant's motion for summary judgment based on Ohio's statute of limitations, Plaintiff spends only two sentences of his 35-page brief addressing the issue. In its entirety, his brief reads: "Defendant's procedural argument regarding Ohio's statute of limitations fails to acknowledge the continuing violation doctrine. Each monthly payment constitutes a separate breach, creating a continuing violation that restarts the limitation period." (ECF No. 35, PageID #5720.) He cites no authority to support this argument. Assuming he has not waived it, there is no reason to believe that the Ohio Supreme Court would extend the availability of this doctrine to a claim for breach of contract. Indeed, it has stressed

that courts reluctantly employ the continuing violation doctrine outside the Title VII context. *State ex rel. Nickoli v. Erie Metroparks*, 124 Ohio St.3d 449, 2010-Ohio-606, 923 N.E.2d 588, ¶ 31 (citing *National Parks Conservation Ass'n v. Tennessee Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007)). The Ohio Supreme Court distinguishes continuing violations from the "continuing effects of prior violations." *Id.* at ¶ 32. Here, if not waived, and if somehow extended outside the Title VII context, Plaintiff's argument that his claims are timely turns on the continuing effects of decisions which he alleges were made in violation of the policy some two decades ago. The continuing violations doctrine does not save Plaintiff's claims.

### I.A.2. Contractual Limitations Period

Under Ohio law, "parties to a contract may agree to limit the time for bringing an action to a period less than provided by relevant statute of limitations so long as that period is reasonable." *Monreal Funeral Home, Inc. v. Farmers Ins. Co.*, 189 Ohio App. 3d 1, 9, 2010-Ohio-3805, 937 N.E.2d 159, ¶ 33 (citing *Kraly v. Vannewkirk*, 69 Ohio St. 3d 627, 632, 635 N.E.2d 327 (1994)). Under the policy, the parties agreed to bar any legal action "after 3 years from the date proof is required to be given." (ECF No. 1-1, PageID #36.) The policy requires written notice of a claim within 30 days after a disability starts or 90 days after the loss occurs. (*Id.*)

It is undisputed that Dr. Nader's disability began on February 23, 2000. (ECF No. 30-10, PageID #4963.) And he began receiving total disability benefits on May 23, 2000. (ECF No. 12-1, ¶ 4, PageID #110–11.) On or around January 17, 2002, Dr. Nader wrote to New York Life contesting the calculation of the cost-of-living

10

adjustments. (ECF No. 30-1, PageID #686–87.) Plaintiff did not file a complaint until September 13, 2023—well after the contractual limitations period.

### I.B. Declaratory Judgment

"A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *International Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997). A claim for a declaratory judgment uses the statute of limitations applicable to the claim underlying the request for declaratory relief. *See Kondaur Capital Corp. v. Smith*, 802 F. App'x 938, 948 (6th Cir. 2020). Because the applicable statute of limitations and the contractual limitations period bar Plaintiff's claim for breach of contract, they also bar his claims for a declaratory judgment.

## II. Remaining Issues

Because Plaintiff's claims are time-barred, the Court does not reach Plaintiff's cross-motion for summary judgment. Likewise, the Court need not consider the two evidentiary disputes between the parties because they do not affect the timeliness of Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment (ECF No. 32), **DENIES** Plaintiff's cross-motion for summary judgment (ECF No. 35), and **DENIES AS MOOT** Defendant's motion to exclude new evidence and new arguments contained in Plaintiff's reply brief (ECF No. 42) and Plaintiff's motion for leave to file authentications for his experts' reports (ECF No. 45).

**SO ORDERED.**

Dated: September 25, 2025

J. Philip Calabrese
United States District Judge
Northern District of Ohio